UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**VFS LEASING CO., et al,**

    **Plaintiffs,**

v.                                                 Case No.: 8:12-CV-2805-T-23EAJ

**SEMPER FI SERVICES, LLC, et al.,**

    **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Before the Court are Plaintiffs' **Motion for Final Judgment by Default against Defendants Semper Fi Services, LLC; SMPR, Inc.; and Peter Shirk** (Dkt. 47) and Plaintiffs' proposed **Order for Plaintiffs' Motion for Final Judgment by Default** (Dkt. 47 Ex. 10). The motion was referred to the undersigned for a report and recommendation. (Dkt. 48) An evidentiary hearing has been held. Defendants did not respond to the motion or attend the evidentiary hearing. For the reasons stated at the hearing and those explained below, it is **RECOMMENDED** that Plaintiffs' motion be granted and that Plaintiffs' proposed default judgment be entered with the change recommended below.

**Background**

Defendant Semper Fi Services, LLC ("Semper Fi") entered into a Master Lease Agreement for commercial trucks and construction equipment with plaintiff VFS Leasing Co. ("VFS Leasing") on September 9, 2009. (Dkt. 1 ¶¶ 14(A), 17) Additionally, defendants SMPR, Inc. and Peter Shirk ("Mr. Shirk") agreed to unconditionally guarantee the existing and future obligations of Semper Fi to VFS Leasing and VFS US LLC. (Id. ¶¶ 81, 88)

Under the Master Lease Agreement, Semper Fi executed four separate schedules (Schedules

002-005) dated September 9, 11, and 16, 2009 and May 17, 2010. (Id. ¶¶ 18, 29, 40, 52) On December 31, 2010, Semper Fi assumed the obligations of a December 3, 2009 secured promissory note executed between Forest Glen MX, Inc. and VFS US LLC. (Id. ¶¶ 14(B), 57) In 2011, Semper Fi defaulted under the terms of Schedules 002, 003, and 004 as well as the secured promissory note. (Id. ¶¶ 23, 34, 45, 62) Furthermore, Semper Fi failed to return the equipment under Schedule 005 in the appropriate condition, requiring $1539.02 in repairs. (Id. ¶ 55)

On December 12, 2012, plaintiffs VFS Leasing and Volvo Financial Services, a division of VFS US LLC (collectively "Plaintiffs"), filed a complaint against Semper Fi and its guarantors. (Id. ¶¶ 1-8) The complaint alleged five counts of breach of contract against Semper Fi, and individual counts of breach of continuing guaranties against Mark Jackson, Robert Walker, SMPR, Inc., Peter Shirk, and Wayne Gilmartin. The claim against Mark Jackson was stayed on January 24, 2014. (Dkt. 43) Pursuant to joint stipulation, the claims against Wayne Gilmartin and Robert Walker were dismissed with prejudice on March 14, 2014. (Dkt. 49, 50) Semper Fi, SMPR, Inc., and Mr. Shirk have failed to appear in this action, and the court granted Plaintiffs' motions for entry of default against these parties on September 19, 2013. (Dkt. 25, 26, 27)

In the motion for final judgment by default, Plaintiffs request: (1) final judgment by default; (2) an award of damages, including prejudgment and post-judgment interest; and (3) an award of attorneys' fees and costs. Specifically, Plaintiffs seek an award of damages in the amount of $136,900.40, interest at the contractual default rate of 18 percent per annum in the amount of $61,768.32, $4,695.00 in attorneys' fees, $180.00 in costs, and interest on the judgment thereafter until paid in full.

**Findings of Fact**

The following facts are established by a preponderance of credible evidence:

1. Defendants Semper Fi, SMPR, Inc., and Mr. Shirk have defaulted and have not entered an appearance in this case.

2. Semper Fi entered into a Master Lease Agreement with Plaintiffs on September 9, 2009. (Dkt. 47 Ex. 1)

3. On September 9, 2009, SMPR, Inc. entered into a Continuing Guaranty with VFS Leasing on behalf of Semper Fi. (Dkt. 47 Ex. 7)

4. On September 9, 2009, Mr. Shirk entered into a Continuing Guaranty with VFS Leasing on behalf of Semper Fi. (Dkt. 1 Ex. 13)

5. On December 3, 2009, Mr. Shirk entered into a continuing guaranty with Volvo Financial Services on behalf of Forest Glen MX, Inc. On December 31, 2010, this guaranty was assigned to Semper Fi. (Dkt. 47 Ex. 6)

6. Pursuant to the Master Lease Agreement, the amount of damages is calculated using the Stipulated Loss Value, which is "the Lessor's cost as shown on the applicable schedule multiplied by the Stipulated Loss Factor as of the applicable date . . . ." (Dkt. 47 Ex. 1 ¶ 4)

7. Pursuant to the Master Lease Agreement, the interest rate is the lesser of 18 percent per annum or the maximum rate allowed by law. (Id. ¶ 6)

8. Semper Fi executed Schedule 002 to the Master Lease entitled "Terminal Rental Adjustment Clause Schedule" on September 9, 2009 that provided two pieces of equipment valued at a total of $234,167.98. (Dkt. 47 Ex. 2)

9.  Semper Fi last submitted payment for Schedule 002 on May 27, 2011. (Court Ex. 2)[1] Upon default, Semper Fi returned the equipment to Plaintiffs on August 3, 2011. The units were sold for $126,222.00. Pursuant to the stipulated loss factor, Semper Fi is liable for $44,648.67, plus $20,079.60 in default interest. (Dkt. 47 at 4-5)

10. Pursuant to a settlement agreement, defendant Wayne Gilmartin made a payment of $30,000 on March 7, 2014. Plaintiffs applied this amount to Schedule 002, thereby reducing the amount for which Semper Fi is liable.[2] (Court Ex. 2)

11. Semper Fi executed Schedule 003 to the Master Lease entitled "Terminal Rental Adjustment Clause Schedule" on September 11, 2009 that provided one piece of equipment valued at $117,083.99. (Dkt. 47 Ex. 3)

12. Semper Fi last submitted payment for Schedule 003 on May 27, 2011. (Court Ex. 2) Upon default, Semper Fi returned the equipment to Plaintiffs on August 3, 2011. The unit was sold for $63,000.00. Pursuant to the stipulated loss factor, Semper Fi is liable for $22,649.47, plus $10,409.40 in default interest. (Dkt. 47 at 5-6)

13. Semper Fi executed Schedule 004 to the Master Lease entitled "Terminal Rental Adjustment Clause Schedule" on September 16, 2009 that provided three pieces of equipment valued at

---

[1] In advance of the evidentiary hearing, Plaintiffs submitted a binder of documents related to the motion. All documents submitted are part of the docket except for Exhibit Number 2 - a schedule of payments received by Plaintiffs for Schedules 002-004 and the Note. This document is referred to as Court Ex. 2.

[2] At the hearing, Plaintiffs' representative stated that Court Ex. 2 included additional adjustments to the amount of damages requested to reflect the most recent accounting. Upon further review of Court Ex. 2, the $1539.02 for repairs under Schedule 005 are not included in the document. The amount sought in Court Ex. 2 is the same as sought in the motion, except for the $30,000.00 credit paid by Wayne Gilmartin and the Schedule 005 repair costs.

$351,251.97. (Dkt. 47 Ex. 4)

14. Semper Fi last submitted payment for Schedule 004 on May 27, 2011. (Court Ex. 2) Upon default, Semper Fi returned the equipment to Plaintiffs on August 3, 2011. The units were sold for $193,444.00. Pursuant to the stipulated loss factor, Semper Fi is liable for $64,761.45, plus $29,763.49 in default interest. (Dkt. 47 at 6)

15. Semper Fi executed Schedule 005 to the Master Lease entitled "Terminal Rental Adjustment Clause Schedule" on May 17, 2010 that provided one piece of equipment valued at $69,395.00. (Dkt. 47 Ex. 5)

16. Semper Fi failed to return the equipment under Schedule 005 in appropriate condition. Plaintiffs performed $1,539.02 in repairs, for which Semper Fi is liable pursuant to the terms of the schedule. (Dkt. 47 at 6-7)

17. On December 31, 2010, Semper Fi was assigned a Secured Promissory Note ("Note") that was executed between Forest Glen MX, Inc. and VFS Leasing for one piece of equipment valued at $52,024.32. (Dkt. 47 Ex. 6)

18. Semper Fi made its last payment for the Note on April 28, 2011. (Court Ex. 2) Upon default, Semper Fi returned the equipment to Plaintiffs on August 3, 2011. The equipment was sold for $26,000.00. Plaintiffs applied this amount to the Note, and Semper Fi is liable for $3,301.79, plus $1,515.83 in default interest. Dkt. 47 at 7)

19. Defendants SMPR, Inc. and Peter Shirk remain liable to Plaintiffs for breach of continuing guaranties.

20. Plaintiffs' motion calculates prejudgment interest totaling $61,768.32 through February 21, 2014. At the May 28, 2014 hearing, Plaintiffs declined to recalculate the interest amount

sought in the February 21, 2014 motion.[3]

21. Plaintiffs are entitled to recover their attorneys' fees under the terms of the Master Lease Agreement and the continuing guaranties.

22. Plaintiffs seek $4,695.00 in attorneys' fees. The Declaration of Capri Trigo in Support of Motion for Final Judgment by Default ("Declaration") states that this amount represents the amount expended "developing the facts and legal issues, crafting the complaint, and serving and prosecuting the complaint against the Non-Responding Defendants, plus efforts to obtain responses and the defaults against them." (Dkt. 47 Ex. 9 ¶ 4)  At the hearing, Capri Trigo ("Ms. Trigo") testified that this amount was determined by going line-by-line through the billing statements and calculating the hours.

23. The Declaration states that the law firm of Gordon & Rees, LLP charges hourly rates of $325.00 for partners, $250.00 for senior counsel and associates, and $175.00 for paralegals. (Id.)  The amount requested is a fraction of the $35,125.69 that the firm has billed Plaintiffs for the action.

24. At the hearing, Ms. Trigo said that few to no paralegal hours were billed with the amount of attorneys' fees requested.

25. Plaintiffs seek $180.00 in litigation costs, "comprised of filing and service fees against the Non-Responding Defendants." (Id.)  Plaintiffs are entitled to recover these costs under the

---

[3] At the hearing, Plaintiffs' representative testified that the interest amount was calculated based on applying the $30,000.00 paid by Wayne Gilmartin to the initial balance. However, this testimony is inconsistent with the amount of interest sought. The interest calculation appears to be based on 18 percent of $136,900.40 owed from August 2011 to February 2014. Because Wayne Gilmartin did not make the payment until March 7, 2014 - after the motion was filed - and Plaintiffs do not seek additional interest for the time since the motion was filed, it is appropriate to award the amount requested in the motion.

Master Lease Agreement and the continuing guaranties.

## Conclusions of Law

When a party fails to defend an action, the clerk must enter that party's default. Fed. R. Civ. P. 55(a). Upon default, the court customarily takes evidence or considers facts from the record in order to "fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12 (1944); see also Fed. R. Civ. P. 55(b)(2). The court "has an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond." Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam) (noting that a default judgment may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation).

**1.    Breach of Contract**

To state a cause of action for breach of contract in Florida, a plaintiff must allege: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. Boim v. Nat'l Data Prods., Inc., 932 F.Supp. 1402, 1405 (M.D. Fla. 1996) (citation omitted).

**2.    Breach of Continuing Guaranties**

"An action for breach of a guaranty arises from a debtor's default and the guarantor's subsequent failure to pay." TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC, 945 F. Supp. 2d 1331, 1343 (M.D. Fla. 2013) (citing Brunswick Corp. v. Creel, 471 So.2d 617, 618 (Fla. 5th DCA 1985)).

**3.     Contract Damages**

Under Florida law, damages for breach of contract should put the aggrieved party in as good a position as he or she would have occupied had the breaching party fully performed. Feldkamp v. Long Bay Partners, LLC, 773 F. Supp. 2d 1273, 1284 (M.D. Fla. 2011), aff'd, 453 F. App'x 929 (11th Cir. 2012) (citing Lindon v. Dalton Hotel Corp., 49 So.3d 299, 305 (Fla. DCA 5th 2010)).

**4.     Prejudgment Interest**

When a recovery is based on state law, state law controls any award of prejudgment interest. See Nelson v. Greater Gadsden Hous. Auth., 802 F.2d 405, 409 (11th Cir. 1986). "Under Florida law . . . the general rule in contract cases is that the prevailing party receives prejudgment interest on its award . . . ." Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1297 (11th Cir. 2002) (citations omitted). The maximum interest rate a lender can charge in Florida is 18 percent. Fla. Stat. § 516.02.

**5.     Attorneys' Fees**

In evaluating Plaintiffs' request for attorneys' fees, the court uses the lodestar, which is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. See Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). The court must also determine whether an adjustment to the lodestar is necessary based on the results obtained. See ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The fee applicant also bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted).

The court may consider direct evidence of rates for similar services or opinion evidence about rates as well as its own expertise and judgment. Id. at 1299-1300.

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436). Further, the court itself is "an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

Plaintiffs' attorneys exhibited proper billing judgment; the fees request of $4,695.00, which is supported by documentation of the hourly rates claimed and hours billed, represents a reasonable amount of hours spent litigating the claims against Defendants at reasonable hourly rates.

**6.     Costs**

Rule 54(d), Federal Rules of Civil Procedure, provides that costs other than attorneys' fees "should be allowed to the prevailing party" unless a federal statute, the federal rules, or a court order provides otherwise. The Master Lease Agreement and continuing guaranties provide for the payment of costs.

**Conclusion**

Plaintiffs' request for damages, prejudgment interest, attorneys fees, and costs is supported by a sufficient factual basis and proper legal principles. Plaintiff is also entitled to post-judgement interest under 28 U.S.C. § 1961(a). Accordingly, and upon consideration, it is **RECOMMENDED** that:

    (1)    Plaintiffs' **Motion for Final Judgment by Default against Defendants, Semper Fi Services, LLC; SMPR, Inc.; and Peter Shirk** (Dkt. 61) be **GRANTED** to the extent that Plaintiff should be awarded damages in the amount of $106,900.40, prejudgment interest in the amount of $61,768.32, and post-judgment interest at the prevailing statutory rate until paid in full.  Further, Plaintiff should be awarded attorneys' fees and costs in the amount of $4,875.00.

**Date: June 6, 2014**

ELIZABETH A JENKINS
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
Unrepresented parties
District Court Judge